### MASON v. GREEN. (No. 2339.)

(Court of Civil Appeals of Texas. Texarkana. Dec. 16, 1920.)

**1. Set-off and counterclaim ⬩15—Set-off against damages allowed plaintiff for conversion cannot be allowed.**

Under Rev. St. art. 1329, prohibiting set-off in suit founded on tort, it was error for the court, in an action for conversion of property exempt from forced sale to a family, to set off against damages allowed to plaintiff a debt due by plaintiff to defendant.

**2. Chattel mortgages ⬩30—Chattel mortgagee's wife need not join unless mortgage is to loan broker.**

Acts 34th Leg. (1915), c. 28, § 11 (Vernon's Ann. Civ. St. Supp. 1918, art. 6171j), making chattel mortgage on household furniture executed by husband without the wife's joining therein void, *held* applicable only to chattel mortgages given loan brokers in view of sections 1, 10 (articles 6171a, 6171i).

**3. Chattel mortgages ⬩30—Purchase-money mortgage on household furniture without wife's consent is valid.**

Acts 34th Leg. (1915), c. 28, § 11 (Vernon's Ann. Civ. St. Supp. 1918, art. 6171j), making a chattel mortgage on household furniture executed by a husband without the wife's consent void, *held* inapplicable to a mortgage securing the purchase price of household furniture.

**4. Exemptions ⬩63—Mortgage on exempt property to secure advances by landlord valid.**

Vernon's Sayles' Ann. Civ. St. 1914, art. 3793, providing that a debt for rents and advances made by the landlord to a tenant may be secured by a loan on exempt personal property, *held* not repealed by Acts 34th Leg. (1915), c. 28, § 11 (Vernon's Ann. Civ. St. Supp. 1918, art. 6171j), making a chattel mortgage on furniture executed by the husband without the wife's consent void; the latter statute being applicable only to mortgages to loan brokers.

**5. Husband and wife ⬩267(4) — Husband may execute mortgage on community property without wife joining therein.**

That the husband alone signed chattel mortgage on household goods did not make the mortgage void on the ground that it was a mortgage of the community property, since under Vernon's Sayles' Ann. Civ. St. 1914, art. 4622, the husband alone may dispose of the community property.

Hodges, J., dissenting.

Appeal from District Court, Lamar County; A. P. Dohoney, Judge.

Suit by Jim Mason against F. P. Green, in which defendant filed a cross-bill. Judgment for defendant on his cross-bill, and plaintiff appeals. Affirmed as reformed.

The appellant sued the appellee for damages for the alleged conversion of certain personal property consisting of 3 beds, 2 springs, 1 chiffonier, sewing machine, cookstove, rocking-chair, trunk, kitchen safe, 4 chairs, 2 tables, wash pots, tubs and board, 20 quilts, 3 mattresses, 10 sheets, feather bed, pillows, flat irons, 75 jars of fruit, piano, kitchen cabinet, wearing apparel, and 5 hogs. The defendant answered by general denial, and in a cross-bill alleged that the plaintiff had executed a promissory note payable to the appellee and had secured same by a chattel mortgage covering, among other things, all the articles mentioned in the original petition of the plaintiff, and had placed the• appellee in possession of the same, and prayed for judgment for the debt and for a foreclosure of the chattel mortgage lien on the property. The appellant by a supplemental petition demurred and excepted to the cross-bill, and answered that at the time of the execution of the chattel mortgage he was a married man living with his wife, and the head of a household. The case was tried before the court without a jury.

The evidence shows that in the year 1919 appellant with his wife and five children moved onto the appellee's farm to make a crop. In order to obtain supplies and advances for the year the appellant executed a note for $600 payable to appellee on October 1, 1919, and at the same time executed a chattel

mortgage to secure the payment of the note on the following:

"All my crop consisting of 30 acres of cotton and 8 acres of corn, 3 horses, 1 wagon, harness, 1 stalk cutter, 2 cultivators, 1 better, 12 sweeps, 1 planter, 1 piano (subject to another note), 1 sow and increase, all household furniture."

Appellant's wife did not sign her name to the mortgage, and did not acknowledge the same. In September the appellant and his family left the farm, as he says, to go elsewhere to pick cotton, intending to be away only temporarily. And the testimony of appellant goes to show that while he was away the appellee took and appropriated the personal property sued for, claiming it as payment on the note. The testimony of the appellee, though, goes to show that the appellant when he left the place left the property in suit in the possession of appellee, and that he has merely held the same for him during that time. The cotton, corn, horses, implements, and hogs mentioned in the mortgage are not involved in the suit, having before suit been by the parties applied on the mortgage debt. It is shown by the evidence that part of the property in suit is "household furniture," and under the terms of the chattel mortgage, and the remaining part, in point of fact, is not household furniture and is not embraced in the terms of the mortgage, but is property exempt under the law.

The court made a finding that the following property was under the terms of and subject to the chattel mortgage, viz., sewing machine, three beds, four chairs, two bedsprings, a rocking-chair, chiffonier, two tables, and a piano, and that the mortgage lien should be foreclosed thereon, and that the appellee had converted the property not under mortgage of the value of $184. The evidence supports the findings of the court.

Judgment was entered in favor of the appellee on his cross-bill for the balance due on the note less the credit of $184 damages allowed the plaintiff, and a foreclosure of the chattel mortgage lien on the sewing machine, three beds, two bedsprings, four chairs, rocking-chair, chiffonier, two tables, and piano.

L. L. James and T. E. McMillan, both of Cooper, for appellant.
Baughn & Johnson, of Paris, for appellee.

LEVY, J. (after stating the facts as above). [1] The appellant contends, under proper assignments of error, that the court erred (1) in crediting the debt adjudged due the defendant by the plaintiff on the note with the amount of damages awarded the plaintiff against the defendant for conversion of exempt property, and (2) in foreclosing the chattel mortgage lien on the property stated in the judgment. The entire property in controversy in the suit is property exempt from forced sale to a family. Some of this property was under the terms of the mortgage as "household furniture," and the rest of the property was not covered by the mortgage. The court found that the property not covered by the mortgage was taken and converted, and he allowed the plaintiff damages therefor. The statute expressly provides that if the plaintiff's suit be founded on a tort, as here, the defendant shall not be permitted to set off any debt due him by the plaintiff. Article 1329, R. S. And the courts especially declined to allow a set-off against claims arising out of exempt property. Craddock v. Goodwin, 54 Tex. 578; Cone v. Lewis, 64 Tex. 331; 24 R. C. L. p. 815, § 21. The purpose and spirit of the exemption law is protection of the exempt property from all manner of coercive process of the law. And to allow a set-off would result in a palpable evasion of the law. This assignment of error is sustained.

[2-5] The contention that the chattel mortgage was void and should not have been foreclosed because the wife did not sign and acknowledge same is predicated upon article 6171j, Vernon's Ann. Civ. St. Supp. 1918. The caption of that act (Acts General Laws 1915, p. 48), as well as the entire law (Vernon's Ann. Civ. St. Supp. 1918, arts. 6171a–6171l) refers and was intended to apply only to a "loan broker," defined in section 1 (article 6171a) as:

"A 'loan broker' is a person, firm or corporation who pursues the business of lending money upon interest and taking as security for the payment of such loan and interest an assignment of wages, or an assignment of wages with power of attorney to collect the same or other order for unpaid chattel mortgage or bill of sale upon household or kitchen furniture."

It is clearly an act undertaking to regulate the business of a loan broker. Section 11, which is the section relied on by appellant, does make void, it is true, any "chattel mortgage upon the household and kitchen furniture of a married man" unless the wife consents to the chattel mortgage by signing with her husband and separately acknowledging the same. But this section, in the light of the preceding section 10 and the other sections and the caption of the act, refers to and applies only, we think, to a chattel mortgage given to a "loan broker." To make void a mortgage on household and kitchen furniture that is not executed by both the husband and the wife is merely a mode or means of regulating "the business," as defined in section 1, "of lending money upon interest and taking as security for the payment of such loan and interest * * * chattel mortgage * * * upon household or kitchen furniture." And neither does the act undertake, expressly or by implication, to repeal any other existing statute pertaining to the giving of a chattel mortgage to per-

sons not a "loan broker." We have heretofore held, and still adhere to that ruling, that this act is inapplicable to a mortgage securing the purchase price of household furniture sold. Strickland v. Dobbs, 200 S. W. 1125. Hence, as the act in question is applicable only to a "loan broker," article 3793, Vernon's Sayles' Civil Statutes (1914), would not be repealed. This article provides that a debt for rents and advances made by a landlord to the tenant may be secured by a lien on exempt personal property, as here. And in Rose v. Martin, 33 S. W. 284, it has been held that a chattel mortgage given by the owner on personal property exempt from forced sale is valid. The fact, then, that the husband alone signed the mortgage would not make it void, as community property, as here, may be disposed of by the husband only. Article 4622, Vernon's Sayles' Civ. Stat. Therefore we think the court did not err in foreclosing the chattel mortgage.

We have considered the other assignments, and think they should be overruled as presenting no reversible error.

The judgment is so far reformed as to allow the appellant judgment for his damages of $184 and interest without crediting it on the amount of indebtedness adjudged due the appellee by appellant, and as so reformed to be in all things affirmed, the appellee to pay costs of appeal.

HODGES, J. (dissenting). Section 11 of the Acts of 1915, p. 48 (Vernon's Ann. Civ. St. Supp. 1918, art. 6171j), which is referred to as the "loan brokers statute," is as follows:

"Each assignment, mortgage, power of attorney to collect or other transfer of the salary or wages of a married man, and each bill of sale or chattel mortgage upon the household and kitchen furniture of a married man shall be void unless the same be made and given with the consent of the wife, and such consent shall be evidenced by the wife joining in the assignment, mortgage, power of attorney to collect or other transfer of salary or wages, and the signing of her name thereto and by her separate acknowledgment thereof, taken and certified to by a proper officer, substantially in the mode provided by law for the acknowledgment by the wife of a conveyance of the homestead."

Section 13 (article 6171l) provides:

"All compromises for usury or unlawful interest collected and received are contrary to public policy, and shall be void."

The language of these two sections is broad enough to include all transactions involving the giving of a mortgage on the household and kitchen furniture of a married man and all compromises for unlawful interest collected, without reference to the character of the creditors with whom such contracts are made. The only reason that can be assigned for limiting the application of section 11 to mortgages made to loan brokers

is the fact that this section is a part of a statute which has for its object the regulation of the business of loan brokers. That reason, of course, assumes that the regulation of the business of loan brokers was the only object the Legislature had in view in passing this law. In its caption the act is described as one defining loan brokers; providing that they shall give bond, the requisites of such bond; providing for its record, and how and where such record shall be kept; providing further for the designation by loan brokers in writing of an agent upon whom citation may be served in case of suit; making it unlawful to conduct business after failing to pay any judgment rendered against them for 60 days; and also prescribing penalties for violation of the act, and providing:

"That each assignment of wages, or order for unpaid wages and chattel mortgage or bill of sale for household or kitchen furniture shall be void unless same be signed and acknowledged by the wife separately."

This caption is sufficiently comprehensive to permit the incorporation in this act of a provision requiring all chattel mortgages and assignments of wages executed by a married man to be in writing and signed and acknowledged by his wife. It occurs to me that the obvious purpose of the Legislature in passing this law was to protect a class of borrowers who usually seek small loans and who are compelled to mortgage their household goods or assign the wages upon which the family must rely for support. It was also designed to protect the wife against the improvident contracts of the husband. If loan brokers were the only class of money lenders who took mortgages on household and kitchen furniture and assignments of wages in such instances, or were the only creditors who made compromises for unlawful interest, there might be a logical reason for limiting all the provision of this act to them. The act, however, should at least be as broad as the evil which it seeks to remedy. It may be that loan brokers do a larger percentage of that kind of business than is done by any other class of money lenders, but that they are not the only creditors who exact as security a mortgage upon the household and kitchen furniture of the family is shown by this transaction. Why should a married man, in order to secure a loan, be permitted to assign his wages or mortgage his household and kitchen furniture to a bank, or any other creditor without the consent of his wife, and not be permitted to enjoy the same liberty when seeking a loan from a loan broker? The hardships resulting from such transactions grow out of the creation and existence of the lien, and not from the character of the lienholder. The loan broker can demand no greater rate of interest than any other money lender. The money secured by the husband on a loan from a bank may be

squandered with as much ease by the husband as that obtained from a loan broker, while the money obtained from a loan broker may be applied to as useful a purpose as that secured from any other source. Under other drastic provisions of this statute the debtor has a better opportunity to protect himself against the oppression and extortion of a loan broker that is furnished against any other class of money lenders with whom he may deal. Again, section 13 makes unlawful and void all compromises for usury or unlawful interest collected. Why should protection against that class of oppressive contracts be limited to loan brokers? The evil is not made greater because he is the author of the oppression. The case of Strickland v. Dobbs, 200 S. W. 1125, referred to in the opinion of the majority, is essentially different from this. There the mortgage was given by the husband for the purchase money of the furniture at the time the purchase was made and before the property had been dedicated to the use of the family. The views I have expressed are not in conflict with the principle which controlled the determination of that case.

For the reasons stated, I am unable to agree with that portion of the opinion rendered in this case which holds that the mortgage on the household and kitchen furniture of the appellant was valid.